810 So.2d 777 (2001)
W.L.S.
v.
K.S.S.V.
2991404.
Court of Civil Appeals of Alabama.
April 13, 2001.
Rehearing Denied August 3, 2001.
*778 W.L.S., appellant, pro se.
Allison L. Alford of Ball, Ball, Matthews & Novak, P.A., Montgomery, for appellee.
THOMPSON, Judge.
K.S.S.V. ("the mother") and W.L.S. ("the father") were divorced by a judgment of the Montgomery County Circuit Court in April 1986. The mother was awarded permanent custody of the parties' daughter. The father was ordered to pay child support in the amount of $100 every two weeks.
Shortly after the divorce, the father was convicted of first-degree rape and sodomy of the parties' daughter. As a result, the father was incarcerated from June 1986 to December 1996. During his incarceration, the father failed to make child-support payments. After the father was released, he began making child-support payments again, in March 1997. The parties' daughter reached the age of majority on November 5, 1999. The father ceased making child-support payments in November 1999.
On February 4, 2000, the mother, acting pro se, filed a process of garnishment to collect the past-due child support accrued from April 1986 to March 1997. She alleged that the father owed $31,937. In response, the father filed a motion to set aside the garnishment and for a hearing to ascertain the correct amount of child support owed. The mother retained counsel and filed a motion to dismiss the father's motion and an answer to the father's motion. The trial court denied the mother's motion to dismiss. On April 17, 2000, the mother filed child-support calculations wherein she alleged that the father owed $28,300 in principal, $28,160 in interest, and $17 in court costs.
Following a hearing on April 18, 2000, the court ordered, on May 18, 2000, that the father pay the mother $28,300 in principal, $28,160.04 in interest, and $17 in court costs, for a total of $56,477.04. The father was ordered to make payments of $500 per month. A continuing income-withholding order was served on the father's employer on May 25, 2000.
On June 12, 2000, the trial court entered a corrected order. In that order, the father was ordered to pay $541.67 per month. The father's employer was again served with an income-withholding order. The father filed a postjudgment motion. The father's employer filed a response to the income-withholding order, stating that the father's gross income was $500.80 per week and his disposable earnings were $380.80 per week. The trial court denied the father's postjudgment motion on August 15, 2000. The father appealed.
The father, acting pro se, asserts that the trial court erred in using an income-withholding order, instead of a garnishment order, to enforce the payment of a child-support arrearage, because the parties' daughter had reached the age of majority. He further contends that it is manifestly unjust for him to be ordered to pay $56,460.04 in past-due child support and interest because he was incarcerated during much of the child's minority.
Determination of the amount of child-support arrearage and how any arrearage should be paid are matters left to the discretion of the trial court, and its judgment on such matters will not be reversed, absent an abuse of discretion. Brown v. Brown, 513 So.2d 617 (Ala.Civ. App.1987). It is well settled that child-support payments become final judgments on the date they are due, and once they have matured they are immune from change or modification. Ex parte State ex rel. Daw, 786 So.2d 1134, (Ala.2000)(citing Ex parte State ex rel. Lamon, 702 So.2d *779 449 (Ala.1997)). In addition, past-due installments of child support are final judgments that may be collected as any other judgment. Motley v. Motley, 505 So.2d 1228 (Ala.Civ.App.1986).
The father argues that § 30-3-60(8), Ala.Code 1975, allows an income-withholding order to be used only to order support for a minor child, and, that because the parties' daughter was no longer a minor when the mother initiated her action to collect the child-support arrearage, the trial court erred in issuing an income-withholding order. We agree.
Section 30-3-60, Ala.Code 1975, contains definitions that pertain to withholding orders for child support. See § 30-3-60, Ala.Code 1975. Section 30-3-60(8) defines "Support or Support Order." as "[s]upport of a minor child and spousal support when such spousal support is collected by the Department of Human Resources...."
In construing a statute, this court looks to the plain meaning of the words used by the Legislature. Our supreme court has said:
"`Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'"
Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998)(quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)).
"It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers."
DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 276 (Ala.1998). Although we have found no cases that discuss whether an income-withholding order can be used to collect child-support arrearage after the child for whom the support was intended has reached the age of majority, our supreme court has held that the term "child-support obligation" does not encompass a child-support arrearage. Ex parte State ex rel. Daw, supra, 786 So.2d 1134. In so holding, our supreme court stated:
"A child-support obligation is based on the court's expectation that the obligor will pay in accordance with the court's established schedule. A delinquent child-support obligation, however, receives different treatment. It is clear that `child support payments become final judgments on the day they are due.' Ex parte State ex rel. Lamon, 702 So.2d 449, 450 (Ala.1997). Thus, the character of the obligation changes once it becomes delinquent, because the fact of the delinquency causes the party to whom the debt is owed to become a judgment creditor, a creditor who may then pursue the typical means of collection that are available to the holder of any judgment. Ex parte State ex rel. Lamon, 702 So.2d at 450. Therefore, a delinquent payment constitutes a legal liability of the obligor, while a child-support obligation is only an expectation *780 that the obligor will make a payment in the future."
786 So.2d at 1137 (Some citations omitted).
In this case, the moneys were ordered to be withheld pursuant to a continuing income-withholding order rather than a garnishment order. Although the mother initiated garnishment proceedings, after she retained counsel, she requested an income-withholding order and the trial court issued an income-withholding order as part of its judgment. Under § 6-10-7, Ala. Code 1975, no more than 25% of a garnishee's disposable or net earnings can be garnished. However, under § 30-3-67 "[a]ny order for income withholding issued pursuant to this article may exceed the statutory minimum amounts prescribed in Section 6-10-7 for garnishment proceedings in Alabama ..." Through the use of an income-withholding order, the mother would be able to collect the child-support arrearage more quickly. However, because the statute provides that an income-withholding order can be used only for the support of a minor child and because the parties' child was not a minor when the mother petitioned to collect child-support arrearage, the trial court erred in issuing an income-withholding order.
The father has disposable earnings of $380.80 per week. By paying $541.67 per month, he is paying approximately 33% of his disposable earnings. Although this amount is within the parameters of § 30-3-67, Ala.Code 1975, pertaining to income-withholding orders, it exceeds the 25% limitation set forth in § 6-10-7, Ala.Code. 1975.
Considering that the mother filed her petition to collect the child-support arrearage after the parties' daughter had reached the age of majority and in light of the plain language in § 30-3-60(8), which provides that an income-withholding order may be used for support of a minor child, we conclude that the trial court erred when it ordered that the child-support arrearage be paid through income withholding. See Ex parte State ex rel. Daw, supra (holding that one to whom a child-support arrearage is owed becomes a judgment creditor who may then pursue the typical means of collection that are available to the holder of any judgment).[1]
The father also argues that the trial court's order was manifestly unjust and that the doctrine of laches is applicable. We note that this court has held that the doctrine of laches generally has no application in regard to past-due child-support payments under a valid divorce judgment. Davis v. State ex rel. Sledge, 550 So.2d *781 1034 (Ala.Civ.App.1989); Rudder v. Rudder, 462 So.2d 732 (Ala.Civ.App.1984). We conclude that the father is obligated to pay the child support that accrued during his incarceration. In Grogan v. Grogan, 608 So.2d 397 (Ala.Civ.App.1992), the father filed a petition to modify a divorce judgment. He requested that his child-support obligation be held in abeyance because he had been sentenced to the state penitentiary for 21 years. The trial court ordered that all child-support payments due to be paid to the mother be suspended until such time as he was released from the state penitentiary, but the court refused to give retroactive effect to its order to cover child-support payments. This court affirmed, holding that it was within the discretion of the trial court to suspend the accrual of child support while one is imprisoned. Grogan, supra. In addition, in Aired v. Aired, 678 So.2d 1144 (Ala.Civ. App.1996), this court, based on its holding in Grogan, concluded that the fact that the father is in prison and unemployed is a matter for consideration in determining his ability to pay. This court further stated, "If the father nevertheless has property or funds available to him, support may be ordered therefrom." 678 So.2d at 1146; See also Smith v. Smith, 631 So.2d 252 (Ala.Civ.App.1993).
The father in this case is employed, earning approximately $1,650 per month. Therefore, we conclude that the father is obligated to pay the child support that accrued during his incarceration. He could have petitioned the trial court and requested that his payments be suspended during his incarceration; however, he failed to do so. Because child-support payments become final judgments on the day they are due and because the father in this case failed to request a suspension of his payments while he was incarcerated, we conclude that he is obligated to pay the child support that accrued during his incarceration. Ex parte State ex rel. Daw, supra; Grogan, supra.
Therefore, we are affirming the trial court's judgment insofar as it orders payment of the child-support arrearage. We are reversing that part of the judgment that ordered that the arrearage be paid by income withholding, and we are remanding the case for an order or proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result in part and dissents in part.
MURDOCK, Judge, concurring in the result in part and dissenting in part.
The two pertinent statutes under review are §§ 30-3-61(a) and 30-3-60(8), Ala. Code 1975. Section 30-3-61(a) provides:
"Any ... original decree, judgment, or order issued by a court of this state for the payment of support, any decree or judgment entered pursuant to a petition to modify an original decree or award of support, any decree or judgment of contempt of court for failure to pay support as previously ordered by a court of this state, or any decree or judgment for criminal or civil nonsupport shall include as a separate section a withholding order ... directing any employer of the obligor to withhold and pay over to the clerk of the court or the Department of Human Resources, or its designee, whichever is appropriate, out of income due or to become due the obligor at each pay period, an amount ordered to be paid for support. The withholding order shall not under any circumstances be waived by mutual agreement of the parties to the case."
*782 (Emphasis added.) Section 30-3-60(8) defines the terms "support" and "support order" as follows:
"Support of a minor child and spousal support when such spousal support is collected by the Department of Human Resources or the department's designee pursuant to the requirements of Title IV-D of the Social Security Act. Support order shall mean any order, decree or judgment for the support of a child...."
In this case, the trial court entered a support order under § 30-3-60(8), Ala. Code 1975, in April 1986, when it directed the father to pay the mother $100 every two weeks for the support of the parties' minor child. On May 18, 2000, after the child reached the age of majority, the trial court found that the father had failed to pay all of the support required under the earlier support order and ordered the payment of the overdue support, plus interest. The court entered an income withholding order pursuant to § 30-3-60(8), Ala.Code 1975.
The issue presented in this case is whether the provision in § 30-3-61(a) for an income-withholding order to enforce a judgment of "nonsupport" is triggered by the subject matter or purpose of a given judgment (i.e., the support of a minor child) or by the timing of the judgment (i.e., those judgments entered only while the child is still a minor). As a threshold matter, it may be noted that by its terms, § 30-3-61(a) is not restricted to judgments entered while the child is still a minor. Nor does § 30-3-61(a) or any other Code provision relating to the payment of support for minors mandate that income withholding orders are to be valid and enforceable only during the period of the minor's dependency. Nor is there a requirement that an income-withholding order be dissolved when a minor reaches the age of majority. It also is instructive that § 30-3-60(8) provides that a "support order shall mean any order, decree or judgment for the support of a child," without any reference to the minority of the child at the time of the order. In my view, therefore, § 30-3-61(a) plainly provides an enforcement mechanism for a qualifying child-support judgment without reference to the timing of that judgment. Whether a given judgment qualifies for this enforcement mechanism is instead a function of its subject matter. The purpose behind § 30-3-61(a) buttresses this interpretation.
This court held in Davenport v. Hood, 814 So.2d 268 (Ala.Civ.App.2000), that a judgment assessing a child-support arrearage could be enforced via contempt sanctions even after the child for whom support had been ordered reached the age of majority. In so holding, we agreed with those jurisdictions that view child-support judgments as differing in nature from ordinary civil judgments, and as warranting enforcement by "more effective means," because public policy requires parents to support their minor children. Moreover, we noted that to hold otherwise "would mean that a custodial parent who has shouldered the burden of supporting the children with little or no financial assistance from the noncustodial parent would be left with only the ability to subject the noncustodial parent's property or wages to an execution of the arrearage judgment." 814 So.2d at 275. The following passage from Davenport, quoting an opinion of the Florida Supreme Court, is particularly apposite:
"`Upon emancipation of a minor child, the support-dependent parent is not magically reimbursed for personal funds spent nor debts incurred due to nonpayment of child support. Hardships suffered by a family do not disappear. *783 A family's feelings of indignation from abandonment by the nonpaying parent or from past reliance on public assistance are not forgotten. Society's interest in ensuring that a parent meets parental obligations must not be overlooked simply because the child has attained the age of majority. The support obligation does not cease; rather it remains unfulfilled. The nonpaying parent still owes the money.'"
814 So.2d at 275 (quoting Gibson v. Bennett, 561 So.2d 565, 572 (Fla.1990)).
In § 30-3-61(a), the Legislature made special provision for income withholding orders to enforce judgments of contempt for failure to pay support and civil-nonsupport judgments. In my view, the trial court's May 18, 2000, judgment is a "judgment" for nonsupport under § 30-3-61(a), triggering the enforcement mechanism in that statute.[2] A contrary holding could place custodial parents, who have expended their own funds on behalf of their children out of necessity because of a lack of support payments during the children's minority, into the same queue with noncustodial parents' general creditors, such as banks and credit-card companies. Such a result would be at odds with the Legislature's intent to provide a more effective collection technique for child support. Moreover, a contrary holding would directly encourage such nonpaying parents to engage in conduct to delay collection efforts until the children reach majority so that only 25 percent of their wages would be subject to withholding (see § 6-10-7, Ala.Code 1975).
The majority cites Ex parte State ex rel. Daw, 786 So.2d 1134 (Ala.2000), for the proposition that "one to whom a child-support arrearage is owed becomes a judgment creditor, who may then pursue the typical means of collection that are available to the holder of any judgment." 786 So.2d at 1137. However, while the majority correctly quotes from the Alabama Supreme Court's opinion in that case, it is important to note that Daw does not address whether a party who is owed a child-support arrearage must pursue only "typical means of collection." Indeed, given the breadth of § 30-3-61(a), and its mandatory language, the Legislature envisions that practically every award of child-support and every judgment enforcing such an award shall be accompanied by an income-withholding order, an enforcement mechanism that goes beyond the scope of "typical" collection means.
This court held in Davenport that to preclude a custodial parent from using an additional and more effective enforcement mechanism after a child has reached the age of majority would have an undesirable result. It would allow some protection for a parent who fails to meet his or her court-ordered child-support obligation during the minority of the child. Therefore, this court held that although a child-support payment may be collected in the same manner as any other judgment, such a judgment may also be enforced using the equitable contempt powers of the court, even after the child is no longer a minor. Davenport, 814 So.2d at 276. In my opinion, the Legislature intended the same *784 with respect to the enforcement mechanism provided in § 30-3-61(a).
I conclude that the trial court correctly issued an income-withholding order as to its May 18, 2000, judgment. Therefore, I respectfully dissent from the majority's reversal as to that order. As to the remainder of the issues raised by the father on appeal, I concur in the result to affirm.
NOTES
[1] The author of this opinion also wrote the majority opinion in Davenport v. Hood, 814 So.2d 268 (Ala.Civ.App.2000), where this court held that a judgment assessing a child-support arrearage could be enforced through contempt sanctions after the child had reached the age of majority. In Davenport, this court discussed policy reasons for that holding. We relied on cases from other jurisdictions that held that child-support judgments differed from other civil judgments because of the public policy requiring parents to support their minor children. Although we feel strongly that the rationale of Davenport v. Hood and the policy considerations discussed in that opinion should govern in this case because we do not believe that a custodial parent who has borne the burden of supporting a child with little or no financial assistance from the noncustodial parent should be placed on equal footing with other judgment creditors, this court is bound by precedent. This court released Davenport v. Hood approximately two weeks before our supreme court released Ex parte State ex rel. Daw, supra, on November 17, 2000. Our supreme court has granted certiorari review in Davenport v. Hood; that case is currently pending before that court. The holding in Ex parte State ex rel. Daw is contrary to this court's holding in Davenport v. Hood. Because we are bound by precedent, we must follow Ex parte State ex rel. Daw in this case.
[2] Neither § 30-3-60 nor § 30-3-61 define the term "nonsupport." However, the Legislature plainly intended that "nonsupport" would mean the absence of "support," i.e., the failure or refusal to pay "support" or to comply with a "support order," as defined by § 30-3-60(8). Cf. § 13A-13-4, Ala.Code 1975 (defining crime of nonsupport as one's intentional failure, despite knowledge of a legal obligation to provide support and the ability to provide support, to support a child less than 19 years of age). Here, the trial court entered a judgment in a civil, not a criminal, action in which it found that the father had failed to pay the support he was required to pay under the 1986 judgment.