849 So.2d 200 (2002)
T.L.D.
v.
C.G.
2010772.
Court of Civil Appeals of Alabama.
November 8, 2002.
*202 Slade Watson, Mobile, for appellant.
Submitted on appellant's brief only.
CRAWLEY, Judge.
T.L.D. is the mother of A.C.G., a 12-year-old girl. In 1997, C.G. was determined to be the father of A.C.G. and was ordered to pay $176 per month in child support. On November 14, 2001, the mother filed a petition to hold the father in contempt for nonpayment of child support and to modify the child-support order to increase the support. The father answered and counterclaimed, seeking a reduction in his support obligation because, he says, he was "experiencing a financial hardship due to a lack of work" and was suffering from hypertension that limited his ability to work.
*203 At a bench trial held on April 11, 2002, the trial court found the father in contempt and determined that he had a child-support arrearage of $7,982.25. The court entered a judgment in favor of the mother for that amount. At trial, the court stated that interest in the amount of $4,977.63 had accrued on that arrearage. The court, however, failed to include interest in the judgment. The court further stated that it was "ordering no pay back on the arrearage at this time," and declined to sanction the father for the contempt. The court stated:
"I am finding him in contempt, but I am not going to do anything about it at this time. I find that the modified amount of child support is more than he can pay right now. He is not working. I guess he is voluntarily underemployed, but you [the mother] can go pursue your judgment some other way. If you think he has property, go after it that way."
The father testified that he had been sporadically employed as a laborer at the Alabama State Docks facility since 1997, earning $10 to $12 per hour. He had also worked as a temporary laborer for three or four other employers. He said that at the time of the hearing he was looking for work and that he was currently receiving unemployment-compensation benefits of $50 per week. The father testified that he had had a commercial driver's license since 1992. He submitted a tax return indicating that he had earned approximately $4,000 in 2001.
The father stated that his mother had died in October 2000 and that he had inherited $5,600 upon her death, as well as a joint interest in a 1987 truck with his sister. The father testified that he was currently three months behind on paying his rent, which is $200 per month. The record indicates that the father had filed a petition in bankruptcy under Chapter 13 in April 1999 and had been making his child-support payments through the bankruptcy trustee. His Chapter 13 proceeding was dismissed in October 2001.
The mother argues that the trial court erred by not adding interest to the amount she was awarded in the judgment and by failing to sanction the father for contempt.

I.
The mother's complaint requests the trial court to "fix the current arrearage and enter a judgment therefor ... and to enter such other, further, and different relief as may be meet and proper in the premises herein considered." The complaint does not specifically request that interest be awarded on the child-support arrearage. "But it is not necessary to [so request], when [interest] is payable by virtue of a statute having special reference to [the] situation." Norris v. Wynne, 247 Ala. 100, 104, 22 So.2d 730, 733 (1945). "[I]t is well-settled under Alabama law that where there is statutory authority for interest, it is not required that one specifically pray for it in the complaint." Trim Building Corp. v. White, 594 So.2d 124, 126 (Ala.Civ.App.1991). "When interest is payable by virtue of a statute or principle of law, and not by virtue of a contract, it is not necessary to claim interest in the complaint." Roe v. Brown, 249 Ala. 425, 426, 31 So.2d 599, 600 (1947).
Section 8-8-10, Ala.Code 1975, provides, in pertinent part:
"Judgments for the payment of money, other than costs, if based upon a contract action, bear interest from the day of the cause of action, at the same rate of interest as stated in said contract; all other judgments shall bear interest at the rate of 12 percent per annum, the provisions of Section 8-8-1 to the contrary notwithstanding...." *204 (Emphasis added.) Section 8-8-11, Ala. Code 1975, provides:
"Except as provided in this section, when partial payments are made, the interest due is first to be paid and the balance applied to the payment of the principal. In the case of a judgment for child or spousal support, or a judgment for medical support of a child or spouse, any partial payment shall be applied first to the principal, and the remaining balance, if any, shall be applied to the interest."

(Emphasis added.)
"Under Alabama law, child-support payment `installments become final judgments as of the date due.' Osborne v. Osborne, 57 Ala.App. 204, 206, 326 So.2d 766, 767 (Ala.Civ.App.1976). Because `judgments for the payment of money bear interest from the date of rendition' `it follows that such [child-support] judgments would bear interest from due date.' Osborne, 57 Ala.App. at 206, 326 So.2d at 767. Therefore, to properly calculate interest on an arrearage, one would have to compute the interest due on each installment from its due date. Id."

Hollen v. Conley, 840 So.2d 921 (Ala.Civ. App.2002).
We acknowledge that a number of this court's decisions indicate that, in order to hold the trial court in error for failing to add interest to a child-support judgment, a party must have "properly requested" that interest be added. See, e.g., State ex rel. Lewis v. Davis, 835 So.2d 1019 (Ala.Civ. App.2002); Hackworth v. Hackworth, 736 So.2d 1116, 1117 (Ala.Civ.App.1999); State ex rel. Burt v. Morgan, 716 So.2d 729, 733 (Ala.Civ.App.1998); Cohn v. Cohn, 658 So.2d 479, 482 (Ala.Civ.App.1994); State Dep't of Human Res. v. McGhee, 634 So.2d 573 (Ala.Civ.App.1994); McDavid v. McDavid, 627 So.2d 446 (Ala.Civ.App. 1993); State ex rel. Hayes v. Hayes, 620 So.2d 49 (Ala.Civ.App.1993); Hawkins v. Harvey, 481 So.2d 907 (Ala.Civ.App.1985); Stewart v. Johnson, 401 So.2d 101 (Ala. Civ.App.1981). After having reviewed the relevant statutes and the precedent from our supreme court, we conclude that, to the extent that this court's prior decisions require that a party make a specific request for interest to be added in a judgment awarding a child-support arrearage, they are erroneous.
By failing to award postjudgment interest on the child-support arrearage, the trial court erroneously applied the law to the facts. See State Dep't of Human Res. v. Orr, 635 So.2d 1 (Ala.Civ. App.1994). "[A] trial court with jurisdiction over proceedings to enforce an earlier child-support judgment is without authority to waive the imposition of statutorily imposed postjudgment interest upon such payments." Walker v. Walker, 828 So.2d 943, 945 (Ala.Civ.App.2002), citing State ex rel. Pritchett v. Pritchett, 771 So.2d 1048, 1051 (Ala.Civ.App.2000).

II.
Since July 11, 1994, all contempt proceedings in civil actions have been governed by Rule 70A, Ala. R. Civ. P. See Savage v. Ingram, 675 So.2d 892, 893 (Ala.Civ.App.1996); Ex parte Boykin, 656 So.2d 821, 828 n. 5 (Ala.Civ.App.1994). Rule 70A(a)(2) provides the following definitions of "criminal contempt" and "civil contempt":
"(C) `Criminal contempt' means either
"(i) Misconduct of any person that obstructs the administration of justice and that is committed either in the court's presence or so near thereto as to interrupt, disturb, or hinder its proceedings, or
*205 "(ii) Willful disobedience or resistance of any person to a court's lawful writ, subpoena, process, order, rule, or command, where the dominant purpose of the finding of contempt is to punish the contemnor.
"(D) `Civil contempt' means willful, continuing failure or refusal of any person to comply with a court's lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with."
A party's actions can support both criminal contempt and civil contempt. See State v. Thomas, 550 So.2d 1067 (Ala.1989).
"Civil contempt seeks to compel or coerce compliance with orders of the court, while a criminal contempt is one in which the purpose of the proceeding is to impose punishment for disobedience of orders of the court....
"The sanction for civil contempt continues indefinitely until the contemnor performs as ordered. A critical distinction is that the sanction for criminal contempt is limited in Alabama district and circuit courts to a maximum fine of $100 and imprisonment not to exceed five days."
State v. Thomas, 550 So.2d at 1072. "In Alabama, a willful failure to pay child support is a civil contempt of court subject to `all sanctions for enforcement of judgments.' § 26-17-15, Ala.Code 1975." Davenport v. Hood, 814 So.2d 268, 275 (Ala. Civ.App.2000).
Whether a party is in contempt of court is a determination committed to the discretion of the trial court. See Coleman v. Coleman, 628 So.2d 698 (Ala. Civ.App.1993). To hold a party in contempt under either Rule 70A(a)(2)(C)(ii) or (D), Ala. R. Civ. P., the trial court must find that the party willfully failed or refused to comply with a court order. See Carr v. Broyles, 652 So.2d 299 (Ala.Civ. App.1994). Inability to pay is a defense to a contempt action in a child-support-arrearage case. Id.
"When a parent is ordered to pay child support and fails to do so, a lack of ability to pay a delinquent amount is a complete defense to a civil contempt proceeding regarding the delinquent child support. In such a case, if the obligated parent presents evidence that [his] failure to pay the delinquency is due to financial inability, the burden then shifts to the parent to whom child support is due to prove beyond a reasonable doubt that the obligated parent is financially able to pay the amount of child support ordered. If a person is found in civil contempt because of [his] failure to pay a certain amount of money, and [he] shows that [he] is unable to pay that amount, then the contempt order must be set aside."
Carr v. Broyles, 652 So.2d at 301-02 (citations omitted) (quoted in Seay v. Seay, 678 So.2d 1189, 1190 (Ala.Civ.App.1996)).
In the present case, the father presented evidence from which the trial court could have found that he was unable to pay $12,959.88 (an arrearage of $7,982.25 plus interest in the amount of $4,977.63). Commenting on that evidence, the trial court stated, "I find that the modified amount of child support is more than he can pay right now. He is not working." Nevertheless, the court found the father in contempta finding that indicates the trial court determined that the father's nonpayment of child support was willful. The trial court's statements and findings appear to be inconsistent.
The apparent inconsistency might be explained by the trial court's further statement, "I guess [the father] is voluntarily underemployed." (Emphasis added.) *206 Rule 32(B)(5), Ala. R. Jud. Admin., states, in pertinent part:
"If the court finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income that parent would otherwise have and shall impute to that parent that income; the court shall calculate child support based on that parent's imputed income."
(Emphasis added.) If the trial court found that the father was voluntarily underemployed and if the trial court imputed income to him, then the finding that the father was in contempt of the child-support order would not necessarily be inconsistent with the finding that the "child support is more than [the father] can pay right now. He is not working." The contempt finding could be construed as a determination that the father was able to pay child support but, by virtue of his voluntary underemployment, he had willfully failed or refused to pay.
Rule 32(B)(5) clearly requires the trial court to impute income to a parent who, it finds, is voluntarily unemployed. See Mitchell v. Mitchell, 723 So.2d 1267, 1269 (Ala.Civ.App.1998) (stating that "a trial court must impute income to a parent and calculate his or her child-support obligation based upon that parent's potential income if `the court finds that [the] parent is voluntarily unemployed or underemployed' ") (emphasis added); Berryhill v. Reeves, 705 So.2d 505, 507 (Ala.Civ.App. 1997) (same). To the extent that some of this court's decisions imply, if not state, that the decision to impute income to a voluntarily unemployed or underemployed parent is discretionary, they are overruled on that point. See, e.g., Morin v. Morin, 678 So.2d 166, 168 (Ala.Civ.App.1996) (erroneously citing Rule 32(B)(5) for the proposition that the trial court may impute income to a voluntarily unemployed or underemployed parent); Cunningham v. Cunningham, 641 So.2d 807, 809 (Ala.Civ. App.1994) (stating that "[i]f the trial court finds that either parent is voluntarily unemployed or underemployed, it may impute that parent's income and calculate the child support accordingly") (emphasis added).
If the trial court intended to find the father in contempt because it determined that his voluntary underemployment was tantamount to a willful failure or refusal to comply with the court's child-support order, then the contempt judgment is incomplete because it provides no means by which the father can purge himself of contempt and no sanction in the event of a failure to purge. Cf. Davenport v. Hood, 814 So.2d 268, 276 (Ala.Civ.App. 2000) (assuming that after the trial court determines the existence of a child-support arrearage, the court should set out "the means by which that arrearage must be repaid or reduced"). The purpose of civil contempt is to compel or coerce compliance with the court's orders. State v. Thomas, 550 So.2d at 1072. A contempt order that does not provide the contemnor with the means of purging himself of contempt is ineffective. Cf. Stevens v. Stevens, 641 So.2d 825, 828 (Ala.Civ.App.1994) (assuming that a contempt finding must be accompanied by the imposition of "such sanctions as may be necessary to effectuate compliance with the trial court's orders").
We are unsure what the trial court intended by the statements, "I guess he is voluntarily underemployed," and "I find him in contempt but I am not going to do anything about it at this time." The judgment of the court is, therefore, reversed and the cause is remanded. On remand, we instruct the trial court to specify whether it formally determined, as a matter of fact, that the father is voluntarily unemployed or underemployed. If the *207 court finds that the father is voluntarily unemployed or underemployed, then it must impute income to him based on the factors outlined in Rule 32(B)(5). If the court imputes income to the father, then it may find him in contempt for nonpayment of his child-support obligation. However, the court must, upon finding the father in contempt, provide a means for the father to purge himself of contempt and a sanction in the event the father fails to purge himself of contempt. Finally, we instruct the trial court to correctly calculate the postjudgment interest[1] on the child-support arrearage and to enter a judgment in favor of the mother for the total amount.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result in part and dissents in part.
MURDOCK, Judge, concurring in the result in part and dissenting in part.
I agree with the majority that T.L.D. was not required to specifically request an award of postjudgment interest in her complaint and that the trial court erred when it failed to award simple interest on C.G.'s past due child-support obligation. The issue of pleading and the issue of raising a claim and properly preserving it for appeal, however, are not necessarily the same. I therefore believe the majority is incorrect in its view that this court should overrule the nine cases it cites as standing for the proposition that a party must "properly request" postjudgment interest at the trial-court level. I reach this judgment after reviewing each of these nine cases, as well as other cases, and concluding that the above-quoted phrase is merely a manifestation, in the context of a claim for child support, of the more general rule that an appellate court will not hold a trial court in error based on an issue not raised below. See, e.g., Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992).
Just as our law requires in a proper case that a court award interest on a past-due child-support obligation, our law a fortiori requires in an appropriate case that a trial court award child support itself. Yet, even as to child support, itself, I know of no case in which a trial court's judgment has been reversed because it failed to make an appropriate award when child support was not requested at the trial-court level. See Somers v. McCoy, 777 So.2d 141, 143 (Ala. Civ.App.2000) (rejecting a claim for postminority child support on the ground that "[t]his court may not consider an issue raised for the first time on appeal.... This court's review is restricted to those arguments considered by the trial court."); Davenport v. Hood, 814 So.2d 268, 270 n. 1 (Ala.Civ.App.2000), writ quashed, 814 So.2d 277 (Ala.2001). Similarly, it remains the responsibility of an aggrieved party to raise to the trial court the issue of postjudgment interest and give the trial court an opportunity to rule on that issue.
Further, I do not think it necessary for this court to reach the foregoing issue in the present case, and I would reverse the judgment of the trial court without doing so. T.L.D. requested in her complaint that the trial court "fix the current arrearage and enter a judgment therefore [sic]... and ... enter such other, further, and different relief as may be meet and proper." The trial court indicated that interest had been put at issue when it acknowledged that interest was due on the child-support arrearage and that it had consulted *208 documents provided by T.L.D. which reflected an interest calculation.[2] This case therefore appears to be no differently postured than the nine cases that the majority would overrule, each of which involved a request for interest either before or at trial or in a postjudgment motion.
In regard to that portion of the majority's opinion pertaining to the trial court's contempt determination, I first note that Rule 32(B)(5), Ala. R. Jud. Admin., does state, in pertinent part:
"If the court finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income the parent would otherwise have and shall impute to that parent that income."
(Emphasis added.)[3] Rule 32, however, provides guidelines for the "establishment and modification" of future child-support payments. See Rule 32(A), Ala. R. Jud. Admin. It does not address the possible imputation of income for purposes of calculating past-due child-support obligations or arrearages, or, more specifically, for guiding trial courts in their consideration of contempt issues relating to past-due child-support obligations.[4]
I have located no authority to support a rigid requirement that a trial court must impute income to a voluntarily unemployed or underemployed party for purposes of a contempt determination. Generally, determinations relating to whether a party should be held in civil contempt are committed to the "sound discretion" of the trial court to enable the trial court, as it sees fit, to protect its authority and dignity and to effectuate compliance with its orders and judgments. See Rule 70A(a)(2), Ala. R. Civ. P.; Fludd v. Gibbs, 817 So.2d 711 (Ala.Civ.App.2001); Stack v. Stack, 646 So.2d 51 (Ala.Civ.App.1994); Uhls v. Uhls, 551 So.2d 1065 (Ala.Civ.App.1989).
Also, while I agree with the majority that a contemnor must be provided with a means of purging himself of contempt, C.G. has not appealed; he has not asked us to hold the trial court in error for not providing him with a means of purging himself of contempt. Further, if a trial court has the discretion to determine whether to even hold a party in contempt, it is only logical that it has the discretion to take the lesser action of holding a party in contempt but abating the imposition of a penalty for that contempt. I am not prepared to hold that a trial court that determines a party is in contempt must ipso facto impose any particular sanctions for that contempt. As noted, the purpose of a civil contempt proceeding is for the court, as it sees fit, to protect its dignity and *209 authority and to ensure compliance with its orders. Just as whether to hold a party in contempt is in a trial court's sound discretion, it is within the trial court's discretion to impose or to refuse to impose sanctions.
Having said the foregoing, I emphasize that in a given case a trial court might abuse its discretion by not finding a party in contempt or by not imposing a sanction based upon such a finding of contempt. This is particularly so where the purpose of the contempt proceeding is to coerce payment of obligations owed by one party to another. I am simply not persuaded at this juncture that this is such a case.
I am in agreement with the majority that, insofar as the trial court's contempt determination is concerned, there is some confusion in the present case as to what the court intended. I therefore agree that this cause should be remanded for the trial court to clarify whether it intended to hold the father in contempt (and whether it intended to impose sanctions). I also agree that the trial court must modify its judgment to include simple interest on C.G.'s past-due child-support obligation. I cannot concur in the remainder of the majority's instructions, however.
NOTES
[1] It appears that the trial court may have improperly used a compounded-interest formula. See Hollen v. Conley, 840 So.2d 921 (Ala.Civ.App.2002), and Campbell v. Campbell, 827 So.2d 111 (Ala.Civ.App.2002).
[2] When T.L.D. began to question C.G. about his child-support obligations, the trial court stated, "Let's move on. I have the accounts record." Thereafter, at the close of T.L.D.'s testimony, she offered her payment records into evidence; they were apparently admitted by the trial court. However, the record on appeal does not contain as an exhibit T.L.D.'s payment records. I note that the record contains what appears to be a payment history prepared by the T.L.D.'s counsel and that some of the dollar figures in that payment history correspond with the principal and interest figures the trial court mentioned when it was discussing C.G.'s child-support arrearage and the interest that had allegedly accrued thereon.
[3] I also note, however, that a court may deviate from the Rule 32 guidelines based upon appropriate written findings "that the application of the guidelines would be unjust or inappropriate" and that otherwise meet the criteria described in Rule 32(A), Ala. R. Jud. Admin.
[4] The issue whether the trial court should have imputed income to C.G. for purposes of calculating his future child-support obligation is not before us. Also, the CS-42 form the trial court completed and the trial court's judgment both reflect that the trial court did impute income to C.G. when it increased his monthly child-support obligation from $176 to $237.