Sandra Gail Broyles Carr ("the mother") and Mike Lane Broyles ("the father") were divorced in 1990. The father was awarded custody of the parties' minor child, a daughter who is now five years old. The mother was ordered to pay child support in the amount of $192.42 per month and was awarded visitation every other weekend, plus time in the summer and on holidays. The mother made no child support payments to the father. Her exercise of her visitation rights was sporadic, but she contended that the father refused to let her see the daughter because she had not paid child support. The father did let the daughter visit her maternal grandparents, but he informed them that he did not want the child around the mother.
In February 1994 the mother petitioned the trial court for a reduction in child support and for enforcement of her visitation rights. The father counterpetitioned, asking the court to terminate the mother's parental rights and to hold her in contempt for nonpayment of child support. After a hearing, the trial court refused to terminate the mother's parental rights, found her to be in contempt of its prior order because of her failure to pay child support, ordered her incarcerated unless she paid $3,000 toward her arrearage within 60 days, modified her current child support obligation to $156.32 per month, ordered her to pay an additional $150 *Page 301 
per month toward an arrearage of $9,012, and modified her visitation to one weekend each month and 48 hours at Christmas, with all visitation to be supervised by her parents. This appeal followed.
The issues raised by the mother are: (1) whether the trial court erred in finding her in contempt of court and ordering her incarcerated; she says she has no present ability to pay the amount ordered to purge herself of contempt; (2) whether the trial court abused its discretion in setting the amount to be paid monthly toward her arrearage; and (3) whether the trial court abused its discretion in reducing and restricting her visitation rights. The trial court granted a stay of its contempt order pending this appeal.
Our review in this case is governed primarily by the ore tenus rule. In a hearing in which evidence is presented ore tenus, such as this one, the trial court's ruling based on that evidence is presumed correct, and it will not be disturbed on appeal unless it is found to be plainly and palpably wrong or unjust. Crowe v. Crowe, 602 So.2d 441, 442
(Ala.Civ.App. 1992). In such a hearing, the trial court is the only judge of the facts and of the credibility of the witnesses. Id. We review the trial court's finding of contempt, however, according to the abuse of discretion standard. Stack v. Stack,646 So.2d 51 (Ala.Civ.App. 1994).
We first address the mother's contention that the trial court erred in finding her in contempt and ordering her incarcerated unless she paid $3,000 toward her child support arrearage within 60 days. The mother argues that she was not given a proper contempt citation, in conformity with Rule 33.3, Ala.R.Crim.P., and therefore, that the trial court's finding that she was in contempt of court was error. Rule 33.3, which was applicable to contempt proceedings in civil cases at the time of the mother's hearing,[1] imposes certain procedural requirements that must be met before the accused can be found in contempt of court. French v. Lyford, 636 So.2d 437, 439
(Ala.Civ.App. 1994). Specifically, Rule 33.3(a) provides that in cases of indirect contempt, "no person shall be found in contempt without a hearing held after a citation of the charge is given." Rule 33.3(b) provides that the requisite citation must be in writing, state that the accused is cited for contempt of court, order that the accused appear before the court to show cause why he or she should not be found in contempt, state the essential facts constituting the alleged contemptuous conduct, and notify the accused of the time and place of the hearing. We agree with the mother that those procedural requirements were not met in this case.
The only mention of potential contempt proceedings in this case appeared in the father's counterpetition, which was filed one week before the hearing scheduled on the mother's petition. This document does not comply with the mandates of Rule 33.3, Ala.R.Crim.P.; thus, no citation was given to the mother as required by the rule. Furthermore, although the father's counterpetition was served on the mother's attorney, the mother herself had no knowledge of it until the day of the hearing. Consequently, the trial court erred by finding the mother in contempt and imposing sanctions. French, 636 So.2d at 439. Seealso Lee v. Lee, 608 So.2d 1383 (Ala.Civ.App. 1992). That portion of the trial court's judgment finding the mother in contempt of court is hereby reversed.
The mother also contends that the trial court erred in ordering her incarcerated because, she says, she is unable to pay a large lump sum to purge herself of contempt. When a parent is ordered to pay child support and fails to do so, a lack of ability to pay a delinquent amount is a complete defense to a civil contempt proceeding regarding the delinquent child support. Ex parte Hulsey, 536 So.2d 75, 77
(Ala.Civ.App. 1988); Dawson v. Dawson, 453 So.2d 1054, 1056
(Ala.Civ.App. 1984). In such a case, if the obligated parent presents evidence that her failure to pay the delinquency is due to financial inability, the burden then shifts to the parent to *Page 302 
whom child support is due to prove beyond a reasonable doubt that the obligated parent is financially able to pay the amount of child support ordered. Hulsey, 536 So.2d at 77; Dawson, 453 So.2d at 1056. If a person is found in civil contempt because of her failure to pay a certain amount of money, and she shows that she is unable to pay that amount, then the contempt order must be set aside. Morgan v. Morgan, 582 So.2d 1147, 1149
(Ala.Civ.App. 1991).
The trial court's order of contempt is grounded upon the mother's apparently willful refusal to pay child support as ordered by the court when the parties were divorced. The mother argues that she has not paid child support because she could not afford to do so, pointing out that she had worked only for short periods of time at a succession of jobs paying minimum wage or slightly above. Even though the mother has worked off and on and has never made much money, the trial court found, and the record reflects, that there were times during the past few years when she could have contributed to her daughter's support, but that she never made the slightest effort to comply with her child support obligation, even when she had the financial ability to do so. The father also testified that the mother had flatly told him she would never pay child support because he made more money than she did. We do not dispute the trial court's finding that the mother failed to support her daughter as ordered. We believe the trial court erred, however, when it failed to determine whether the mother had thepresent ability to comply with its order that she pay $3,000 within 60 days.
The record reflects that the mother was represented by Legal Services Corporation because she could not afford an attorney. When filing her petition, the mother also requested that the docket fee in this case be waived; the trial court granted that request. According to the mother's affidavit of substantial hardship supporting that request, her net weekly income is $192.93, or approximately $830 per month. She estimated her monthly expenses at $725. The mother's 16-month-old son from a subsequent marriage presently lives with her, but she is now divorced, and she testified that her son's father is not paying child support for that child. Her affidavit indicated that she is receiving no type of public benefits, that she has no bank accounts or cash on hand, and that she owns nothing of value. We find that the mother presented evidence indicating that she is presently unable to pay the $3,000 necessary to purge herself of contempt. Furthermore, this court has previously held that if an appellant is so indigent that she cannot pay a docket fee of $100, then we must conclude that she likewise is unable to raise a lump sum amount required to purge herself of contempt. See Ex parte Wilson, 474 So.2d 1133, 1134
(Ala.Civ.App. 1985); Knight v. Sager, 370 So.2d 311, 312
(Ala.Civ.App. 1979).
Thus, the burden shifted to the father to prove beyond a reasonable doubt that the mother had the financial means available to purge herself. Although counsel for the father makes in his brief a conclusory allegation that the mother's expenses listed on her affidavit of substantial hardship are inflated, the father presented no evidence at the hearing to dispute that presented by the mother. The record contains no evidence to indicate that the mother owns any assets that could be sold to pay the $3,000, and no evidence of bank accounts or other financial reserves that could be tapped to pay this amount. The father, therefore, failed to carry his burden of proof. Accordingly, the trial court erred in ordering the mother incarcerated unless she paid $3,000 toward her arrearage within 60 days. On remand, if, after service of a proper contempt citation upon the mother, the court finds the mother in contempt of court for her failure to abide by its prior order regarding the payment of child support, she must be allowed to purge herself of contempt in a manner that is consistent with her means and ability to comply. Lawler v. Ray,451 So.2d 348, 349 (Ala.Civ.App. 1984).
We now turn to the mother's contention that the trial court abused its discretion in ordering her to pay $150 per month over and above her current child support obligation toward the child support arrearage accumulated in this case. She does not complain of the modification of her current child *Page 303 
support obligation to $156.32, but argues that $150 in addition to that is beyond her ability to pay and still support herself and the child who lives with her. The trial court's determination of the amount of a child support arrearage and the means by which that arrearage shall be reduced are largely discretionary matters that will not be reversed on appeal absent an abuse of discretion. Cook v. Cook, 578 So.2d 1354,1357 (Ala.Civ.App. 1991). The financial ability of a parent to pay child support cannot be ignored; however, the payment of child support should not exceed the reasonable financial ability of the parent. Id. at 1358. A child's best interests are not served by a child support award that forces the parent into insolvency. Id.; Pruett v. Pruett, 333 So.2d 580, 582
(Ala.Civ.App. 1976).
According to the record, after payment of her current child support obligation, plus $150 toward her arrearage, the mother will be left with $530 per month with which to support herself and her son. We agree with the trial court that much of the mother's problem is due to her failure to keep a job for more than a few months at a time and to her history of voluntarily quitting many of the jobs she has been able to obtain. The mother should be encouraged to help herself and her children by stabilizing her employment so that she can seek advancement and higher wages, to consider obtaining a second job, to inquire about any public benefits to which she might be entitled, and to seek child support from the father of the child she is presently supporting alone. At this time, however, we must conclude that the trial court abused its discretion when it ordered the mother to reduce her arrearage at the rate of $150 per month, because it appears that it did not take into account her ability to pay. We reverse that portion of the trial court's judgment ordering the mother to pay $150 per month toward the reduction of her child support arrearage and remand this case for the trial court to reconsider the amount of monthly arrearage payments.
Finally, we review the trial court's modification of the mother's visitation privileges with the daughter. The trial court has broad discretion in determining the visitation rights of a noncustodial parent, and its decision in this regard will not be reversed absent an abuse of discretion. Alexander v.Alexander, 625 So.2d 433, 435 (Ala.Civ.App. 1993). Every case involving a visitation issue must be decided on its own facts and circumstances, but the primary consideration in establishing the visitation rights accorded a noncustodial parent is always the best interests and welfare of the child.Fanning v. Fanning, 504 So.2d 737, 739 (Ala.Civ.App. 1987).
The record in this case reflects the following: The mother's last regular visitation with the daughter occurred in February 1993, and she last saw the child in November 1993. The daughter has visited more recently with her maternal grandparents. The father is in part responsible for this situation, because of his refusing to allow the daughter to visit with her mother and his discouraging the grandparents from allowing the daughter to see her mother. The mother's financial situation has hampered her ability to obtain legal assistance in enforcing the visitation afforded her in the divorce judgment. She does not seek an increase in that visitation, but only to exercise the visitation privileges she was granted previously.
Aside from the mother's failure to pay child support, the father stated that he denied visitation because of the mother's lifestyle, especially the men whom she dates and with whom she has occasionally lived. The record reflects, however, that the mother says she has never allowed a man to stay overnight if the daughter was staying with her and that the daughter has spent very little time around any of the men whom the mother has dated. The father and his present wife, Christine, testified that in their opinions, the daughter's best interests would be best served if the mother's parental rights are terminated and if Christine Broyles is allowed to adopt the daughter. Testimony reflected, however, that the daughter asks about her mother and wants to see her mother and her stepbrother.
Our examination of the record reveals no evidence to indicate that the mother is in any way incapable of caring for the daughter when the child is visiting with her. The *Page 304 
mother's 16-month-old son from her second marriage lives with her, and nothing in the record demonstrates any concern about the welfare of this child in her care. Of equal importance, no evidence in the record suggests that visiting with the mother is in any way detrimental to the daughter. This court has previously held that if a divorce judgment is modified to limit a parent's visitation based on misconduct, the limitation ordered must be supported by evidence that the misconduct of the parent is detrimental to the child. Jones v. Haraway,537 So.2d 946, 947 (Ala.Civ.App. 1988).
Based on the record before us, we conclude that the trial court abused its discretion in reducing the mother's visitation with the daughter. The trial court appears to have reduced the mother's visitation privileges primarily because of her failure to meet her financial obligations toward her daughter. Reduced visitation on that basis is not in the best interests of this child. A noncustodial parent should be given the opportunity to maintain a meaningful relationship with her child. Speakman v.Speakman, 627 So.2d 963, 965 (Ala.Civ.App. 1993). The trial court's reduction of the mother's visitation rights is not reasonable, given the evidence that the daughter wants to visit with her mother and sibling and that the mother seeks the opportunity to re-establish her relationship with her daughter. We have previously approved limited visitation structured by a trial court to allow for a gradual reacquaintance between a father and his children who had not seen each other for some time. Fanning, 504 So.2d at 738-39. In Fanning, however, the trial court set time limits on the limited visitation and expanded the father's visitation schedule after allowing for time in which the father could re-establish his relationship with his children. The trial court in this case has allowed the mother to become reacquainted with her daughter, but has made no provisions to allow her a reasonable opportunity to develop their relationship.
Likewise, we conclude that the trial court abused its discretion in ordering that all visitation be supervised by the maternal grandparents. The testimony that the mother is capable of caring for her daughter during visitation was undisputed. There is no evidence that visiting in her mother's home has ever been, or will be, harmful to the daughter. This court has upheld supervised visitation in cases in which there were allegations of abuse on the part of the noncustodial parent or in instances in which the noncustodial parent experienced severe psychological problems. See, e.g., I.L. v. L.D.L., Jr.,604 So.2d 425 (Ala.Civ.App. 1992); Y.A.M. v. M.R.M.,600 So.2d 1035 (Ala.Civ.App. 1992); Watson v. Watson, 555 So.2d 1115
(Ala.Civ.App. 1989); Caldwell v. Fisk, 523 So.2d 464
(Ala.Civ.App. 1988). Those concerns are not present in this case. We reverse that portion of the trial court's judgment reducing and restricting the mother's visitation with her daughter and remand this case to the trial court with instructions to set a more reasonable, expanded schedule of unsupervised visitation between the mother and the daughter.
The remainder of the trial court's judgment is affirmed.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of §12-18-10(e), Ala. Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
All the Judges concur.
[1] See Baker v. Heatherwood Homeowners Ass'n, 587 So.2d 938
(Ala. 1991). Effective July 1, 1994, Rule 33, Ala.R.Crim.P., was amended so as to apply only to contempts arising in criminal cases. Contempts arising in civil cases are presently governed by Rule 70A (Interim), Ala.R.Civ.P.