PER CURIAM.
S.O. and N.O. (“the maternal grandparents”) appeal a February 5, 2013, judgment awarding visitation with A.B. (“the child”), of whom the maternal grandparents have custody, to the child’s father, K.B. (“the father”).
This child has been the subject of a previous appeal involving the maternal grandparents and C.O., the child’s mother. In C.O. v. S.O., 85 So.3d 460 (Ala.Civ.App. 2011), this court reviewed a judgment awarding custody of the child to the maternal grandparents and denying the mother’s request for visitation with the child; that appeal is discussed later in this opinion. We note that the Etowah Juvenile Court (“the juvenile court”) ordered that the record from the action in C.O. v. S.O., supra, be incorporated into the record on appeal in this case. The record reveals the following facts.
In September 2008, the Etowah County Department of Human Resources (“DHR”) filed a dependency petition seeking to remove the then two-month-old child from the custody of the parents because of domestic violence by the father against the mother. In October 2008, the juvenile court entered a judgment finding the child dependent as a result of domestic violence in the home. The juvenile court awarded custody of the child to DHR, which placed the child with the maternal grandparents. Shortly thereafter, the father was arrested on charges of manufacturing methamphetamine and possession of a controlled substance.
In January 2011, the mother filed a petition seeking the return of custody of the child; the maternal grandparents asserted a claim for custody during the hearing on the merits in that action. The juvenile court conducted an ore tenus hearing; the father was not present at that hearing because he was in prison. On May 16, 2011, the juvenile court entered a judgment awarding the maternal grandparents custody of the child, denying the mother visitation at that time, and ordering that DHR close its supervision of the matter.
On appeal from the May 16, 2011, judgment, the mother did not contest the award of custody of the child to the maternal grandparents; she argued only that the juvenile court had erred in failing to award her visitation with the child. C.O. v. S.O., supra. This court reversed, concluding that, although the facts supported the juvenile court’s determination that the mother’s conduct had had a negative impact on the child, given the facts, the mother’s visitation should not have been suspended entirely. C.O. v. S.O., 85 So.3d at 466. On remand, the juvenile court awarded the mother one hour of supervised visitation on alternating weeks.
On August 24, 2012, the father, who had been released from prison on August 13, 2012, filed a verified petition stating that he was on parole and seeking visitation with the child. In that verified petition, the father stated that the maternal grandparents “have exhibited such a routine pattern of denial of visitation that the development and nurturing of the father’s loving relationship with his daughter is *350 threatened.”[1] The father requested an ex parte visitation order; in requesting that ex parte relief, the father did not allege that the child was in danger or that an emergency existed. See Ex parte Norlan-der, 90 So.3d 183, 185 (Ala.Civ.App.2012) (the only exception to the rule that a custodial parent or custodian can be deprived of custody, even temporarily, without notice is when there is an allegation that the child is in danger).
On August 24, 2012, the same day the father requested ex parte relief, the juvenile court entered an ex parte order awarding the father five hours of visitation at a mall on alternating Saturdays and ordering that visitation begin the next day, Saturday, August 25, 2012. The August 24, 2012, order made no provision for any supervision of the father’s visitation and, instead, specified that “[t]he maternal grandparents of the minor child are to allow the parties privacy during the visit” and that the father is to timely return the child to a specified meeting place in the mall at the end of the visitation period.
It is undisputed that the maternal grandparents were served with the father’s petition for visitation and the juvenile court’s ex parte August 24, 2012, visitation order on the afternoon of Friday, September 7, 2012. On September 10, 2012, the father filed a motion seeking to have the maternal grandparents held in contempt for their failure to bring the child to visitation on September 8, 2012. Also on September 10, 2012, the juvenile court entered an order scheduling the contempt motion for a hearing on October 19, 2012, and ordering the maternal grandparents to comply with the August 24, 2012, ex parte order in the interim.
On September 14, 2012, the maternal grandparents filed a response to the father’s petition for visitation and a motion to stay enforcement of the August 24, 2012, ex parte visitation order pending an evidentiary hearing. In their response and motion to stay, the maternal grandparents detailed the father’s past conduct, which formed the basis for their concerns for the child’s safety. In addition, the maternal grandparents argued that the father had made no attempt to contact them for visitation before filing his petition and his request for ex parte relief, that the father had provided no reason for failing to provide them notice of his petition before seeking the ex parte order, and that no emergency situation existed warranting an ex parte order. The maternal grandparents also argued that the father had had no contact with the child since she was one year old and that the now four-year-old child did not know the father; therefore, they contended, the visitation arrangement established in the August 24, 2012, ex parte order was not in the child’s best interests.
On September 18, 2012, the juvenile court entered an order specifying that the father was to receive visitation for one hour on alternating Thursday nights at a local mall and that that visitation was to be supervised by the maternal grandparents. The October 19, 2012, hearing was rescheduled, and the juvenile court eventually heard ore tenus evidence on the merits on January 16, 2013.
The evidence from that hearing indicates the following. Monica Frazier, the DHR social worker assigned to the child’s case between October 2008 and October 2010, testified that the child had been removed from the parents’ custody because of domestic violence by the father. The father had not cooperated with DHR’s of *351 fer of reunification services and had not visited regularly with the child. Further, the mother’s testimony from the record in the 2011 appeal indicated that issues of domestic violence between the parents had continued after the child was removed from their custody. C.O. v. S.O., 85 So.3d at 462.
Frazier testified that, when she initially began to work with the parents in 2008, the father had informed her that personnel of the Veterans Administration (“VA”) hospital wanted to hospitalize him for some undisclosed psychological condition. Frazier stated that the father refused hospitalization but began attending counseling at the VA hospital. The father refused to allow DHR access to his records through the VA, so, Frazier said, DHR was unable to determine the nature of the counseling or the condition for which the father was treated. The father attended counseling for only a few months before his arrest in late 2008.
At the hearing in this matter, the father denied that anyone at the VA hospital had wanted to hospitalize him for any condition other than when he had had a bad reaction to the prescription medication Paxil or Prozac. The father testified that he was “going to the VA [for counseling] to get a diagnosis” but that he was arrested before any diagnosis was reached.
The father was arrested in December 2008 on charges of manufacturing methamphetamine and possession of a controlled substance. The father testified that he was initially sentenced to an 18-month split sentence on those charges. However, while serving that sentence, the father escaped from the Etowah County jail in February 2010 and remained at large for several days. Frazier testified that, when he escaped from jail, the father telephoned her and made threats against her and two other DHR employees. Therefore, Frazier stated, the DHR employees filed a motion seeking a restraining order. On February 17, 2010, the juvenile court entered a restraining order prohibiting the father from “annoying, telephoning, intimidating, molesting, interfering with or menacing,” or attempting to engage in that conduct, with regard to the DHR employees, the maternal grandparents, and the child. That order also specified that the father was prohibited from being within 500 feet of the DHR office, the homes of the DHR employees mentioned in the restraining order, and the home of the maternal grandparents and the child.
It is undisputed that the father spent several days during his escape in the home of the mother. The mother initially informed DHR workers that the father had held her against her will. However, the father disputed that allegation and testified that the mother had informed him that DHR was pressuring her to press charges against him but that she had refused to do so.
The father testified that, upon his capture, he was not charged with a criminal count of escape. The father explained that, because he had escaped after jail personnel had let him leave jail to obtain an identification card, the escape was considered a “breach of trust.” Regardless, the father was charged and convicted of resisting arrest and domestic violence, and his previous split sentence was revoked; the father was then sentenced to a 10-year prison sentence on the original felony drug charges and on the new charges that arose as a result of the escape.
The father testified that, while he was in prison, he had completed a long-distance parenting class but that he had not contacted the child from prison; the father represented that the February 17, 2010, restraining order prevented him from con *352 tacting the child or the maternal grandparents in any way.
The father also testified that he had completed a substance-abuse program in prison. The father had been charged with driving under the influence (“DUI”) in 2007, but he was arrested on the felony drug charges that resulted in his prison sentence before he was tried on that DUI charge. As a part of a delayed prosecution of that 2007 DUI charge, upon his release from prison, the father agreed to participate in random drug testing; the father stated that doing so would “erase” the DUI charge from his record. The father testified that the drug testing had started in November 2012 and that he had not tested positive for the use of any illegal drugs.
The father was released from prison on August 13, 2012, and he began residing with his mother and her husband. The mother and the father have a second child, a son (“the son”), who is younger than the child at issue in this case. The son was also removed from the parents’ custody, and he was placed in the home of the father’s sister. We note that S.O. (“the maternal grandfather”) testified that, while the father was incarcerated, the father’s sister had worked with the maternal grandparents to arrange visits so that the child could see her sibling. The father testified that his sister had recently returned custody of the son to him and that the son now lived with him in the paternal grandmother’s home; the father did not clearly answer whether he had notified DHR or the child’s mother about the purported change in custody of the son.
The father testified that, since his release from prison, he had worked “off and on” for a friend in the construction industry. The father admitted that he had not contributed to the support of the child.
The father testified at the hearing on this matter that, contrary to his statements in his verified petition for visitation, he had made no attempt to contact the maternal grandparents to notify them of his release from prison or to request visitation with the child before he filed his petition for visitation. In explaining his failure to request visitation with the child before filing his August 24, 2012, petition, the father cited the February 17, 2010, restraining order, which prohibits the father from harassing or intimidating the maternal grandparents or coming within 500 feet of their home, as prohibiting him from contacting them at all; the father did not explain the allegations in his verified petition asserting that the maternal grandparents had refused requests that he be allowed to visit the child.
The maternal grandfather testified that the maternal grandparents’ receipt of the service of the father’s petition and the ex parte visitation order was their first notice that the father had been released from prison. The maternal grandfather testified that, given the father’s past conduct and threats, he was frightened for the safety of the maternal grandmother, himself, and the child, who was four years old. For that reason, the maternal grandfather said, the maternal grandparents did not take the child to the visitation scheduled for September 8, 2012, and they immediately contacted their attorney. Comments by the juvenile court during the questioning of the maternal grandfather during the hearing on the merits indicate that the juvenile court believed that the August 24, 2012, ex parte visitation order required the maternal grandparents to supervise the father’s visitation with the child; the order contains no such provision. The maternal grandfather explained that because the ex parte visitation order specified that the father was to be afforded “privacy” with the child, he interpreted that order as *353 requiring the maternal grandparents to leave the child alone with the father.
The maternal grandfather described the visitations that occurred pursuant to the September 18, 2012, order, which afforded the father one hour of supervised visitation with the child. The maternal grandfather stated that the child had not seen the father in more than three years and that she been hesitant to interact with the father during visitations. He stated, however, that the father had engaged the child more effectively at the last visit before the hearing on the merits. The maternal grandfather testified that the maternal grandparents usually allowed the father more than the 1 hour of visitation set forth in the September 18, 2012, order because it usually took the child 30 to 45 minutes to “warm up” to the father. When asked why he did not bring the son to any of the visits and whether having her sibling there might have made the child more comfortable, the father testified that he had not brought the son to his visitations with the child because “it is my time” with the child.
The maternal grandfather testified that the maternal grandparents oppose anything other than supervised visitation for the father. The maternal grandfather stated that he has concerns about the father’s truthfulness and potential safety concerns, not only based on the father’s history but also based on his current situation. The maternal grandfather cited as an example that the father, in requesting additional Christmas visitation with the child, had provided two different explanations regarding where he planned to take the child. The maternal grandfather also testified that the father kept from the maternal grandparents the fact that he had custody of the child’s sibling.
On February 22, 2013, the juvenile court entered a judgment noting that the father had lost custody of the child because of his criminal history and finding that the “[t]he father needs an opportunity to establish a relationship with his [child]. Such will never occur if his only access is supervised visitation for one hour every other week.” Therefore, the juvenile court awarded the father a standard schedule of unsupervised, alternating-weekend visitation from 6:00 p.m. on Fridays through 6:00 p.m. on Sundays. In addition, the father was awarded unsupervised’ holiday visitation with the child.
In its February 22, 2013, judgment on the merits, the juvenile court appointed a guardian ad litem for the child, and it ordered the father to pay $25 per month in child support.[2] In addition, the juvenile court stayed the enforcement of the February 22, 2013, judgment for 14 days pursuant to Rule 62, Ala. R. Civ. P.
The father filed a postjudgment motion. On February 15, 2013, the juvenile court entered an amended judgment modifying some of the provisions pertaining to the *354 scheduling of the father’s visitation periods. That amended judgment contained a provision again staying the enforcement of that order for 14 days pursuant to Rule 62.
The maternal grandparents timely appealed. The maternal grandparents successfully moved the juvenile court for a stay of its February 22, 2013, judgment, as amended, so that they could seek a stay in this court. On March 8, 2013, this court granted, pending further orders of the court, the maternal grandparents’ motion to stay visitation filed in this court. On March 14, 2013, this court entered another order extending the stay of the juvenile court’s judgment pending further order of this court and ordering that the briefing process and appeal be expedited.
On appeal, the maternal grandparents argue that the juvenile court erred in awarding the father unsupervised alternating-weekend and holiday visitation with the child. As this court noted in the previous appeal involving this child:
“The determination whether to grant visitation is a matter within the discretion of the juvenile court, and the juvenile court’s principle objective in determining visitation is the best interests of the child. § 12-15-314(a)(4), Ala.Code 1975; Y.N. v. Jefferson Cnty. Dep’t of Human Res., 67 So.3d 76 (Ala.Civ.App.2011); Pratt v. Pratt, 56 So.3d 638, 641 (Ala.Civ.App.2010); and Minchew v. Mobile Cnty. Dep’t of Human Res., 504 So.2d 310, 311 (Ala.Civ.App.1987). This court has explained:
“ ‘[T]he guiding principle in determining visitation with a dependent child, or with a child who is the subject of a visitation dispute between parents, is the child’s best interests. Alabama statutory law and caselaw precedent establish that a juvenile court may suspend a parent’s rights of visitation with his or her dependent child if visitation with the parent is demonstrated to be not in the child’s best interests.’ ”
C.O. v. S.O., 85 So.3d at 465 (quoting Y.N. v. Jefferson Cnty. Dep’t of Human Res., 67 So.3d 76, 83 (Ala.Civ.App.2011)).[3]
In this case, the evidence indicates that the child was removed from the parents’ custody when she was an infant because the father committed acts of domestic violence against the mother; the mother’s testimony in the record indicates that domestic violence continued after the child was removed from the parents’ custody. The October 2008 dependency judgment contained a finding that the child was dependent as a result of the father’s acts of domestic violence. As part of its reunification services, DHR offered the parents supervised visitation with the child, which the father attended only occasionally. While the child remained in protective custody, the father engaged in criminal activity that resulted in his being sent to prison. During a February 2010 escape from incarceration, the father engaged in threat *355 ening behavior such that the juvenile court imposed a restraining order on the father, prohibiting him from threatening DHR workers, the maternal grandparents, and the child.
In his August 24, 2012, verified petition for visitation, the father alleged that the maternal grandparents had denied him visitation with the child. At the hearing on the merits, the father admitted that he had made no attempt to contact the maternal grandparents or their attorney of record before filing his claim seeking visitation and making those allegations against them.
The maternal grandparents cite the Alabama Custody and Domestic or Family Abuse Act, § 30-3-180 et seq., Ala.Code 1975, as support for their arguments on appeal. Although the maternal grandparents did not expressly cite that act to the juvenile court, the maternal grandparents, in their arguments to the juvenile court concerning the best interests of the child, identified the same factors set forth in § 30-3-132, Ala.Code 1975, specifically, whether the child would be safe with the father, as well as the father’s history of committing domestic violence and of engaging in threats to others. Section 30-3-132 provides, in part:
“(a) In addition to other factors that a court is required to consider in a proceeding in which the custody of a child or visitation by a parent is at issue and in which the court has made a finding of domestic or family violence the court shall consider each of the following:
“(1) The safety and well-being of the child and of the parent who is the victim of family or domestic violence.
“(2) The perpetrator’s history of causing physical harm, bodily injury, assault, or causing reasonable fear of physical harm, bodily injury, or assault, to another person.”
In response to the maternal grandparents’ arguments regarding the father’s past conduct and the possibility that the young child might not be safe with the father, the juvenile court observed that people do change and deserve second chances. We agree with that sentiment in general. Further, we recognize the discretion afforded a trial court in matters of visitation. Carr v. Broyles, 652 So.2d 299, 303 (Ala.Civ.App.1994). However, “[ejvery case involving a visitation issue must be decided on its own facts and circumstances, but the 'primary consideration in establishing the visitation rights accorded a noncustodial parent is always the best interests and welfare of the child.” Carr v. Broyles, 652 So.2d at 303 (emphasis added); see also Ex parte Thompson, 51 So.3d 265, 272 (Ala.2010) (“A trial court in establishing visitation privileges for a noncustodial parent must consider the best interests and welfare of the minor child and, where appropriate, as in this case, set conditions on visitation that protect the child.”).
We agree with the maternal grandparents’ arguments that the father’s mere assertions that he has changed and his two to three months’ worth of negative drug tests do not establish that the father has overcome and altered his past conduct such that a small child, who has little relationship with or recollection of him, should be turned over to the father for unsupervised, overnight weekend visitation. Under the facts of this case, that visitation award does not ensure the safety of the child.
“As always, the primary consideration in determining a noncustodial parent’s visitation rights is the best interests of the child; our supreme court has recently reiterated that ‘[a] trial court in establishing visitation privileges for a noncustodial parent must consider the best interests and welfare of the minor child and, where appropriate, as in this case, *356 set conditions on visitation that protect the child.’ Ex parte Thompson, 51 So.3d 265, 272 (Ala.2010).”
C.O. v. S.O., 85 So.3d at 466.
The juvenile court may fashion a visitation award that allows the father to demonstrate his suitability for visitation and a relationship with the child in a manner that does not place the child at risk of harm. Accordingly, we reverse the juvenile court’s judgment as to visitation and remand this cause for it to reconsider its award of unsupervised visitation to the father.
The maternal grandparents also contend that the juvenile court failed to comply with the Rule 32, Ala. R. Jud. Admin., child-support guidelines in ordering the father to pay $25 per month in child support for the child. There are no child-support forms in the record on appeal. Rule 32(E), Ala. R. Jud. Admin., requires that the record contain the Rule 32 child-support forms and that the forms be deemed incorporated into the juvenile court’s judgment. Bradford v. James, 879 So.2d 1184, 1187 (Ala.Civ.App.2003) (citing Nelson v. Landis, 709 So.2d 1299, 1300 (Ala.Civ.App.1998)); Wilkerson v. Wal-drop, 895 So.2d 347, 348^49 (Ala.Civ.App. 2004). Therefore, this court is unable to determine the manner in which the trial court determined the father’s child-support obligation. Accordingly, we reverse the juvenile court’s judgment as to child support and remand this cause for compliance with the Rule 32 child-support guidelines.
REVERSED AND REMANDED.
THOMPSON, P.J., and THOMAS, J., concur.
MOORE, J., concurs in the result, without writing.
DONALDSON, J., concurs in part and dissents in part, with writing, which PITTMAN, J., joins.

. The father’s petition for visitation was supported by his affidavit in which he testified that the allegations in his petition were true and correct.

. The guardian ad litem has filed in this court a response to the maternal grandparents' appeal. However, the juvenile court did not appoint the guardian ad litem until after the hearing on the merits and its resolution of the parties’ positions on the issue of visitation. Therefore, this court, because it cannot determine upon what information the guardian ad litem bases her response, may not consider her recommendation. Further, because the juvenile court first appointed the guardian ad litem in its judgment on the merits of the visitation dispute, it is clear that it could not have relied on any recommendation of the guardian ad litem in reaching its judgment. This court may not consider facts, evidence, or arguments not presented to the trier of fact. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”).

. The record indicates that the previous judgments removing the child from the father’s custody, and maintaining that arrangement, contained no express provision regarding the father's visitation with the child. Before the father's incarceration, while DHR had legal custody of the child, DHR afforded the father only supervised visitation, which he exercised occasionally. The May 16, 2011, judgment, entered while the father was in prison, did not address the father's visitation rights. Given those unique facts, and because none of the parties has alleged that the father's action amounts to an action seeking a modification of visitation, we decline to review the father’s claim as one seeking a modification of a previous judgment pertaining to visitation. See H.HJ. v. K.T.J., 114 So.3d 36, 41 (Ala.Civ. App.2012) (explaining that visitation may be modified only upon a showing of a material change in circumstances).